UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **SONY DISCOS, INC., ET AL.** § | |
| § | |
| § | C.A. NO. H-02-3729 |
| **VS.** § | |
| § | JURY |
| **E.J.C. FAMILY PARTNERSHIP, LTD,** § | |
| **ET AL.** § | |

Defendants' Reply to Plaintiffs' Opposition to
Defendants' Motion for Attorney Fees and
Objections to the Affidavit of Stephen S. Andrews

The Copyright Act provides that the district court, in its discretion, may award costs, including reasonable attorneys' fees, to the prevailing party. 17 U.S.C. § 505. In the Fifth Circuit, attorneys' fees awards are "'the rule rather then the exception and should be awarded routinely'" and "evenhandedly to both prevailing plaintiffs and defendants." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779 (S.D. Tex., 2009) (citing *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008).

**I.   Under the Nonexclusive *Fogerty* Factors, Defendants are a Prevailing Party Entitled to their Full Costs and Attorney Fees.**

The United States Supreme Court has held that successful plaintiffs and defendants are equally entitled to recover costs and attorneys' fees under § 505. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994), the Supreme Court corrected an inconsistency among the circuits and mandated an "evenhanded" approach in awarding attorneys' fees such that "[p]revailing plaintiffs and prevailing defendants are to be treated alike." The decision whether to award attorneys' fees is placed in the Court's sound discretion. *See* 17 U.S.C. § 505; *Fogerty*, 510 U.S. at 533-34. The *Fogerty* factors are nonexclusive and the objective unreasonableness factor is to be considered in both the factual and legal components of

the case. *See Fogerty*, 510 U.S. at 535 n. 19; *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008) (citing *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004)). Not every factor must weigh in favor of the prevailing party and other factors may be considered. *See id*. There may be other factors sufficiently weighty to justify the award of attorney fees. *See id*. Application of the *Fogerty* factors leads to the inevitable conclusion that defendants are entitled to recover their full attorneys' fees for responding to plaintiffs claims.

## A.     Degree of Success Obtained

Defendants completely prevailed in this action. Accordingly, the first factor weighs heavily in favor of a recovery of fees and costs.

## B.     Frivolousness and Objective Unreasonableness

The second factor also weighs in favor of a fee and costs award. The Court's findings in its Opinion On Summary Judgment establishes that plaintiffs' claims of indirect copyright infringement were unsupported by law. This case is far removed from the group of cases that plaintiffs continue to argue have "facts almost identical" to the case at hand.[1] Such an argument is a misrepresentation to this court. Plaintiffs continue to advance an argument that the facts in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 261 (9th Cir. 1996) are "almost identical to those here."[2] The Ninth Circuit, for purposes of its opinion, accepted as true the plaintiff's "allegation that the **majority** of Cherry Auction vendors sell counterfeit Latin music tapes" and the infringing activities on the premises were allegedly taking place in "massive quantities." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 847 F. Supp. 1492, 1497 (E.D. Ca. 1994) (emphasis added); *Fonovisa Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).

---

[1] Plaintiffs' Opposition to Defendants' Motion for Attorneys' Fees at 4.
[2] *Id*.

Cole's has never permitted vendors to sell illegal counterfeit sound recordings on its premises.[3] Cole's has never advertised the offer for sale of any type of sound recording.[4] Before this lawsuit was filed, the number of individuals selling music at Cole's on any given day varied.[5] On average, there would be 15 to 20 tables or booths (out of almost 950 on site) selling music on any given weekend, and of these around six would be temporary vendors while the rest would be permanent.[6] Plaintiffs presented no evidence to indicate that any significant number of the vendors at Cole's who sold music ever sold counterfeit CDs or tapes. Plaintiffs presented no evidence that any significant number of consumers came to the market in order to buy infringing music.

Plaintiffs own investigation evidences that the sale of counterfeit music was de minimis. Plaintiffs' undercover investigators made 21 visits to Cole's from January 2000 to September 2002.[7] On three separate weekends, Plaintiffs' investigators were unable to find any illegal material being sold. On six other weekends, Plaintiffs own investigators were able to identify only one table—out of approximately 944—at which they believed illegal recordings were offered for sale and there is no evidence or assertion that it was the same table or vendor on each weekend.[8] On 19 of the 21 weekends in which Plaintiffs' own investigators performed searches, zero to less than 1% of the tables were identified by the investigators as having material they believe to be unauthorized recordings.[9] Plaintiffs' investigators never believed that they identified what they thought were unauthorized music recordings at more than 1.69% of the tables.

---

[3] Defendants' Response to Plaintiffs' Motion for Summary Judgment on Liability at 3 n.1.
[4] *Id*. at 4 n.5.
[5] *Id*. at 4 n.6.
[6] *Id*. at 4 n.7.
[7] *Id*. at 4 n.8.
[8] *Id*. at 4-5.
[9] *Id*. at 5.

An expert survey of Cole's customers indicates that illegal recordings are not a significant draw.[10] This survey revealed that only 0.2% of customers interviewed (3 out of 1,476 customers) said that their main reason for coming to the flea market was to buy music.[11]  Only 4% of those surveyed indicated that they would be shopping for music.[12]  Out of the 4% that indicated that they would be shopping for music, when asked whether buying music was the main reason they came out to the flea market, only 46 individuals (or 3% of the total number of survey participants) agreed.[13]  Further, out of a sampling of those who indicated that they were there to shop for music, **none** indicated that they were there looking solely for copies of music.[14] Additionally, Cole's revenue was unaffected when it prohibited the sale of CDs altogether save and except those certain long-time permanent vendors, which had been established as selling legitimate music recordings.

Defendants do not have to show "bad faith" to be awarded fees.  *Fantasy, Inc. v.* Fogerty, 94 F.3d 553, 560 (9th Cir. 1996) ("a finding of bad faith, frivolous or vexatious conduct is no longer required" to support an award of fees under section 505).  Plaintiffs claims also do not have to be objectively unreasonable in order to award attorney fees.  *See Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593 (6th Cir. 2008) (permitting the award of attorney fees under 17 U.S.C. § 505 even when a plaintiff's claims were objectively reasonable).  When viewed in their entirety, the objective unreasonableness of the factual and legal components of plaintiffs' claims independently support the award of fees and costs to defendants.

---

[10] *Id*. at 5 n.9.
[11] *Id*. at 5 n.10.
[12] *Id*. at 5 n.11.
[13] *Id*. at 5, n.12.
[14] *Id*. at 5 n. 13.

### C. Consideration of Compensation and Deterrence and Other Factors

The elements of compensation and deterrence and the consideration of other factors also support the award of fees and costs. Plaintiffs were trying to stretch the evidence and authorities in order to use this case to make new law—strict liability for commercial property owners for any third-party wrongful conduct that occurs on their property. Plaintiffs were not motivated by a desire to protect their copyrights.

After the lawsuit was filed, Cole's simply banned the sale of all CDs except for a small number of long-time permanent vendors who were known to be selling only legitimate recordings. Defense counsel tried to engage plaintiffs' counsel in settlement discussion. Defense counsel were made aware that this case would not be resolved at a level that was reasonable. Plaintiffs' sought to only further their agenda. As noted by this court in its Opinion on Summary Judgment, "[i]t is an attempt to pass the cost of protecting one's copyright to middlemen and, ultimately, to consumers."

The purpose of allowing third-party liability for copyright infringement is "to punish one who unfairly reaps the benefits of another's infringing behavior." *Artists Music, Inc. v. Reed Publ'g (USA), Inc.*, Nos. 93 CIV. 3428(JFK), 73163, 1994 WL 191643, at *4 (S.D.N.Y. May 17, 1994). Third-party liability for copyright infringement is meant to allow the copyright holder to sue a contributor to the infringement "in effect as an aider and abettor." *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003). Under any interpretation of the facts, defendants did not reap any benefits nor act in effect as an aider and abettor.

### II. Affidavit of Stephen S. Andrews

Plaintiffs have made a number of objections to the affidavit of Stephen S. Andrews filed in support of the defendants' attorney fees claim. As stated in Mr. Andrews affidavit exhibits A-

1 to A-23 are true and correct copies of the original invoices sent to and paid by defendants. Exhibit A-24 is a report prepared by the billing department of Brown McCarroll, LLP from the same information used to generate the invoices in exhibits A-1 to A-23 and shows the time keeper, rate and time expended. To address plaintiffs' objections, defendants attach the business records affidavit of Kristi Goertz hereto marked as exhibit 1. Exhibit 1 not only contains the exhibits A-1 to A-24 contained in the affidavit of Stephen S. Andrews but also exhibits B-1 to B-23, which correspond with exhibits A-1 to A-23 and contain detailed billing information including, the date work was performed, description of the work, timekeeper performing the work, time expended on each task and the amount of money associated with each task. Exhibit 1 addresses the objections of the plaintiffs' to the original affidavit.

### III.   Conclusion

For all of the foregoing reasons, defendants respectfully request that the Court exercise its discretion in defendants' favor and award them their full attorneys' fees and costs as the prevailing party in this action pursuant to 17 U.S.C. section 505, together with all other relief to which they show themselves justly entitled.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  |  |
|  | /s/ Stephen S. Andrews by permission SAM |
|  | Stephen S. Andrews |
|  | State Bar No. 01250300 |
|  | S.D. Bar No. 1458 |
|  | OAKS, HARTLINE & DALY, LLP |
| OF COUNSEL: | 2323 S. Shepherd, 14th Floor |
|  | Houston, Texas 77019 |
| Scott Morrison | Telephone: 713-979-5566 |
| State Bar No. 24013200 | Facsimile: 713-979-4440 |
| S.D. Bar No. 26218 | E-mail: andrews@ohdlegal.com |
| OAKS, HARTLINE & DALY, LLP |  |
| 2323 S. Shepherd, 14th Floor | ATTORNEY IN CHARGE FOR DEFENDANTS |
| Houston, Texas 77019 | E.J.C. FAMILY PARTNERSHIP, LTD., |
| Telephone: 713-979-5566 | E.J.C. ENTERPRISES, INC. AND |
| Facsimile 713-979-4440 | ELWYN J. COLE |
| E-mail: morrison@ohdlegal.com |  |

CERTIFICATE OF SERVICE

      This pleading was served in compliance with Rule 5 of the Federal Rules of Civil Procedure on June 15, 2010 by forwarding copies to:

Mr. Stacy R. Obenhaus
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
E-mail: sobenhaus@gardere.com

Russell J. Frackman
Eric J. German
Mitchell Silberberg & Knupp, L.L.P.
11377 West Olympic Blvd.
Los Angeles, CA 90064-1683
E-mail: rjf@msk.com
E-mail: ejg@msk.com

Matthew Oppenheim
Michael Huppe
Recording Industry Association of America, Inc.
1330 Connecticut Ave., NW
Washington, DC 20036-1725

                                                  /s/ Stephen S. Andrews by permission SAM
                                                  Stephen S. Andrews